AO 91 (Rev. 11/11) Criminal Complaint

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*April 24, 2020*

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Khalid Abdullah ABDULLAZIZ, DOB: 11/26/1987 | ) | Case No. **4:20mj0737** |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **March 27, 2020** in the county of **Harris** in the **Southern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C § 922(d)(1): | Providing a False Statement when Purchasing a Firearm : Selling a Firearm to a Prohibited Person |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

ATF Special Agent James Settelen
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/24/2020

*Judge's signature*

City and state: Houston, TX

Magistrate Judge Dena H. Palermo
*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, James Settelen, a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), duly sworn, depose and state the following:

1. I am a Special Agent with ATF, employed by the agency for approximately 4 years. During this time, I have been assigned to the Organized Crime Drug Enforcement Task Force (OCDETF) where I have conducted and participated in numerous investigations concerning illegal federal firearms activities, federal controlled substance violations, conspiracy laws, and the commission of violent crimes.

2. During my employment as an ATF Special Agent, I have received specialized training in, and personally participated in, various types of investigative activity. These activities include, but are not limited to: physical surveillance, debriefing defendants, witnesses, informants and other individuals who have knowledge concerning violations of federal firearms laws, undercover operations, the execution of search warrants, the consensual monitoring and recording of conversations, electronic surveillance with pen registers, and trap and trace devices, the court-authorized interception of both wire and electronic communications (i.e., Title III wiretaps), and the handling and maintenance of evidence.

3. This affidavit is made for the limited purpose of establishing probable cause in support of a criminal complaint alleging that **Khalid Abdullah ABDULLAZIZ**, DOB: 11/26/1987 unlawfully violated the following federal laws:

- Title 18 U.S.C § 922(d)(1): It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person is under indictment for or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year.

- Title 18 U.S.C § 922(b)(5): It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver any firearm or armor-piercing ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual.

- Title 18 U.S.C. § 924(a)(1)(A): Whoever, knowingly makes any false statement or representation with respect to the information required to be kept in the records of a federal firearms licensee (FFL).

- Title 18 U.S.C. § 2: (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

4. I base this affidavit, in part, on my personal participation in this investigation, from information provided to me by other law enforcement officers, the review of consensually monitored and/or recorded conversations, criminal history records maintained by various law enforcement agencies,

the National Criminal Information Center ("NCIC"), and the training and experience of myself and other law enforcement agents and officers.

5. On March 27, 2020, Your Affiant secured two confidential informants to make initial contact with **ABDULLAZIZ** at 2318 Roy Road, Pearland, TX 77581, which is the business address for Zeroed in Armory, LLC. The first confidential informant ("CI-1") is a convicted felon and prohibited from possession of firearms. CI-1 has been an ATF Confidential Informant for approximately 11 years and has consistently provided reliable information leading to numerous felony arrests. The second confidential informant ("CI-2") was not a convicted felon or prohibited from possessing firearms. CI-2 could therefore pass a Federal Bureau of Investigation (FBI) National Instant Criminal Background Check (NICS) and CI-1 could not. CI-1 was provided $4300.00 prerecorded funds. CI-1 and CI-2 were also fitted with an audio/video recording device which your Affiant has reviewed along with speaking to both CI-I and CI-2 after each encounter. CI-1 and CI-2 traveled to Zeroed in Armory, LLC together. Upon making initial contact with **ABDULLAZIZ**, CI-1 began to view the firearms in **ABDULLAZIZ** possession and converse about firearms for sale in the business. CI-1 discussed what was in stock and **ABDULLAZIZ** points to three firearms on the wall. CI-1 asks about the big guns and notices a .50 BMG caliber rifle which was mounted on a tripod and setting on the floor of the business. **ABDULLAZIZ** tells CI-1 it is $13,000.00. **ABDULLAZIZ** says he has two of them in stock and one with a larger barrel that does not come with a tripod. CI-1 directs his attention to the firearms on the wall and requests to see a rifle from the wall which was a Romarm/Cugir, PSL-54, 7.62 Caliber, Rifle, SN: S563619. **ABDULLAZIZ** hands the firearm to CI-1. CI-1 discusses **ABDULLAZIZ's** inventory being low and mentions some boxes of AK's which were

posted on the ZIA Instagram page. **ABDULLAZIZ** informs CI-1 that they sold out of about a pallet in a day. **ABDULLAZIZ** tells CI-1 the PSL rifle is $1705.00. CI-1 asks about the AUG rifle on the wall. **ABDULLAZIZ** and CI-1 discuss features on the Steyr Arms, Inc., AUG/A3, .223 Caliber, rifle, SN: 14USA269 and **ABDULLAZIZ** states it is $1775.00. CI-1 tells **ABDULLAZIZ** he will take those two. **ABDULLAZIZ** asks CI-1 if he has a Texas carry permit. CI-1 states no. **ABDULLAZIZ** ask for his ID. CI-1 hands **ABDULLAZIZ** his Texas Drivers License. CI-1 asks **ABDULLAZIZ** what he is going to do with the driver's license. **ABDULLAZIZ** tells CI-1 he is going to conduct CI-1's background check. CI-1 tells **ABDULLAZIZ** he has to be honest with him and advised **ABDULLAZIZ** he was a felon. **ABDULLAZIZ** states, "You are probably not going to pass a background check then". **ABDULLAZIZ** informs CI-1 he has to legally do a background check and asks if CI-2 is at least 18 years of age. CI-1 asks **ABDULLAZIZ** if he wants to do it. **ABDULLAZIZ** tells CI-1 and CI-2 that as long as CI-2 is buying for herself/himself and not for CI-1 you can do it but that is up to you guys. CI-2 states she/he will do it. **ABDULLAZIZ** says "however, you guys want to do it". **ABDULLAZIZ** tells CI-2 that "obviously if you give them to him and I know you guys are getting them for home protection so if you give them to him and you get caught, that's definitely don't do that." **ABDULLAZIZ** allows CI-2 to fill out the ATF Form 4473 – Firearm Transaction Record to purchase the firearms.

6. **ABDULLAZIZ** tells CI-1 the total is $3767.10. CI-1 pays **ABDULLAZIZ** for the firearms that CI-2 filled out the ATF Form 4473 for. CI-1 gives **ABDULLAZIZ** $3,800.00 USD. **ABDULLAZIZ** counts the cash and provides CI-1 $33.00 USD change from his wallet. **ABDULLAZIZ** conducts the FBI NICS Background Check on CI-2. Background Check number

NTN: 101C6L052. **ABDULLAZIZ** allows CI-2 to certify the ATF Form 4473 by signature and **ABDULLAZIZ** certifies by signature indicating he has verified the information and CI-2 is the actual purchaser.

7. **ABDULLAZIZ** transfers the Romarm/Cugir, PSL-54, 7.62 Caliber, Rifle, SN: S563619 to CI-1 by handing it to him/her out of the box with knowledge that CI-1 is a convicted felon and prohibited from receiving, transferring, and possession of firearms. CI-1 takes the firearm to the car and returns inside. **ABDULLAZIZ** places the Steyr Arms, Inc., AUG/A3, .223 Caliber, rifle, SN: 14USA269 in the box and again transfers the firearm to CI-1. CI-1 exits the business and places the firearm in the car. CI-1 returns inside and tells **ABDULLAZIZ** he will come back for the .50 BMG tripod mounted rifle on the floor. **ABDULLAZIZ** tells him it would be a nice toy to have. **ABDULLAZIZ** asks if he can email the receipt to CI-2. CI-1 and CI-2 exit together.

8. On April 15, 2020, at the direction of Your Affiant, CI-1 placed a consensually recorded phone call to **ABDULLAZIZ** at phone number (832) 410-2308, which is the listed phone number to Zeroed in Armory, LLC, located at 2318 Roy Road, Pearland, TX 77581. At approximately, 4:27 pm, the call was placed and lasted a duration of 1 minute 53 seconds (1:53). During this phone call, CI-1 inquires about a .50 caliber rifle for sale. **ABDULLAZIZ** tells CI-1 that it was sold but another one is on order and will be there at the end of the week or early the following week. CI-1 inquires about any other firearms that are in stock. **ABDULLAZIZ** tells CI-1 he has an AK, a nice O-PAP that is a private party sale, so it does not need any paperwork or taxes on it or anything. **ABDULLAZIZ** informs CI-1 it costs $920. CI-1 later set up an appointment for the following day to

purchase the AK rifle without any paperwork and place a deposit for an M3, .50 caliber rifle.

9. On April 16, 2020, at the direction of Your Affiant, CI-1 and CI-2 traveled to Zeroed in Armory, LLC together. Upon arrival, CI-2 remained in the vehicle and CI-1 entered the business. **ABDULLAZIZ** immediately states, "you are picking up the AK and putting the money down on the M3, right". CI-1 affirms. **ABDULLAZIZ** picks up a Zastava, 7.62 caliber, rifle, model: OPAP M70, SN OPAP004375. He checks it and hands it to CI-1. CI-1 asks how often he gets firearms with no paper. **ABDULLAZIZ** states it is hit or miss. He (the individual selling firearm) is a regular customer and decided he wanted to get rid of it. **ABDULLAZIZ** tells CI-1 it is $925. CI-1 pays **ABDULLAZIZ** $1000 USD. **ABDULLAZIZ** does not have CI-1 fill out an ATF Form 4473 for the sale of the rifle. Furthermore, **ABDULLAZIZ** does not conduct the NICS Background Check on CI-1 as required by law. At this point in time, **ABDULLAZIZ** does not know CI-2 is in the vehicle outside the business and willingly sells the rifle to CI-1 with knowledge CI-1 is prohibited from possession of firearms.

10. **ABDULLAZIZ** walks to his computer and asks if CI-1 is purchasing the M3 or is it for someone else. CI-1 states, "No, my son's girlfriend. **ABDULLAZIZ** asks her name. CI-1 states, "If I could I would". **ABDULLAZIZ** states if it is for her it's all good. He is going to write up the invoice for it to give him a receipt. This indicates that **ABDULLAZIZ** is aware that CI-1 cannot possess firearms due to the fact CI-1 is a convicted felon.

11. At the direction of Your Affiant, CI-1 was asked to place a phone call in front of **ABDULLAZIZ**, speaking in Spanish, discussing the firearm CI-1 purchased. CI-1 tells the individual on the phone Sir, Listen, I am already here. Yes. CI-1 asks **ABDULLAZIZ** if the rifle comes with any clips. **ABDULLAZIZ** tells CI-1, yes it comes with three. CI-1 states in Spanish to the individual on the phone it comes with three. CI-1 asks where, by when. To Mexico, yeah I will take that, I didn't want to go but it's okay. CI-1 hangs up the phone. CI-1 tells **ABDULLAZIZ** the boss is making me drive all the way down to Mexico with this shit. **ABDULLAZIZ** clarifies CI-1 is talking about taking the firearm to Mexico. CI-1 affirms. **ABDULLAZIZ** tells CI-1 he can't take the firearms to Mexico and asked if he is joking and states he can't take those to Mexico that will get you in a lot of trouble. CI-1 states that they handle it and are paid over there. That's their deal. CI-1 discusses other firearms and ammunition for sale. CI-1 looks at some .308 belt fed ammunition and inquires about it. **ABDULLAZIZ** asks if CI-1 has a .308 belt fed. CI-1 states, they have a couple of them down there. CI-1 is again indicating to **ABDULLAZIZ** he intends to smuggle the firearms and ammunition to Mexico.

12. CI-1 inquires about the timeline when the M3, .50 caliber rifle will arrive. **ABDULLAZIZ** states hopefully end of this week or early next week and tell CI-1 he has two more come in if he decides he wants another one. CI-1 inquires about the firearms on the wall are considered rifles or pistols. **ABDULLAZIZ** was informed during the phone call on April 15, 2020 by CI-1, he could not purchase pistols because CI-2 was not at least 21 years of age. **ABDULLAZIZ** tells CI-1 the firearms are rifles and cost $399.00.

13. **ABDULLAZIZ** hands CI-1 the receipt for the deposit of the M3 rifle. **ABDULLAZIZ** then begin to tell CI-1 the laws regarding taking the firearms to Mexico. **ABDULLAZIZ** states, "Just a heads up, if you are taking these down to the border, that's fine. Don't cross the border, make sure nobody is crossing the border with these guns. That is a big time federal crime. If you tell me that I can't even sell you a gun. If you are taking them to the border, as long as you are in the U.S. you are good. Don't take them to Mexico, I can't sell you guns if you are doing that." CI-1 does not deny his intent and places another phone call in Spanish discussing another rifle on the wall for sale. CI-1 states in Spanish, "They have some other ones here for sale" he then asks **ABDULLAZIZ** what caliber the rifle is. **ABDULLAZIZ** affirms it is 5.56. CI-1 hangs up the phone and then immediately tells **ABDULLAZIZ**, "Yeah, let me get one of those".

14. CI-1 begins to pay **ABDULLAZIZ** for the second rifle. **ABDULLAZIZ** states, Is that for CI-2. CI-1 states, "Yeah". **ABDULLAZIZ** asks if CI-2 is there. CI-1 gets CI-2 from the vehicle. When CI-2 arrives inside, **ABDULLAZIZ** asks CI-2 if he/she wants to pick up one of these AR's. CI-2 states, yeah. **ABDULLAZIZ** hands the rifle to CI-2. CI-1 asks how much. **ABDULLAZIZ** states $433.00. CI-1 pays **ABDULLAZIZ**, $450 USD and applies the change of $17.00 to the deposit of the M3 rifle.

15. CI-1 picks up the Zastava, rifle purchased earlier without any paperwork and exits the building with it to place it in the car.

16. CI-2 fills out the ATF Form 4473, Firearm Transaction Record, for the Anderson, rifle, Multi caliber, Model AM-15, SN: 20066879, in which CI-1 paid **ABDULLAZIZ** for.

17. **ABDULLAZIZ** asks CI-1 if they have been stocking up for a while or are they just getting into buying guns. CI-1 tells him, for a while. **ABDULAZIZ** asks, to shoot them or just collect them? CI-1 states, "shoot some, resell others." **ABDULLAZIZ** begins to counsel CI-1 about the laws of selling firearms. **ABDULLAZIZ** states, "You are allowed to sell guns in Texas, but let's say, giving you a heads up on how this works. Let's say you guys come in here and you buy this gun and you decide, whatever, you feel like you want to sell it, you can sell it, that's fine. If you come in here buying this gun and you already know you are going to go flip it, that's illegal. It's all about your intention. So if you are buying this to sell it, don't buy it. If you are buying it because you want it, and then you decide you want to sell it later, well that's up to you. You can sell anything you want. Just a heads up".

18. **ABDULLAZIZ** states, before I hit submit, I have to ask, that AR is for you right. You are not buying it for anyone else, right? CI-2, responds, right. **ABDULLAZIZ** states, you are allowed to buy a thousand of them if you want. You just can't buy for anyone else. **ABDULLAZIZ** conducts an FBI NICS Background Check on CI-2. CI-1 picked up the Anderson rifle. **ABDULLAZIZ** tells CI-1 that he has been selling a bunch of those and a guy came in a few weeks ago and purchased (105) AR's.

19. **ABDULLAZIZ** gets CI-1's contact information and tells him he will give him a call when the other gun gets there, referring to the M3, .50 Caliber rifle. **ABDULLAZIZ** allows CI-1 to exit the business with the rifle that CI-2 purchased.

20. Each licensed dealer shall enter into a record each receipt and disposition of firearms (Acquisition and Disposition). In addition, before commencing or continuing a firearms business, each licensed dealer shall inventory the firearms possessed for such business and shall record the same in the record required by Title 27 Code of Federal Regulations (CFR) 478.125(e). Specifically, the purchase or other acquisition of a firearm shall, except as provided in paragraph (g) of section 478.125 be recorded not later than the close of the next business day following the date of such purchase or acquisition. The record shall show the date of receipt, the name and address or the name and license number of the person from whom received, the name of the manufacture and importer (if any), the model, serial number, type, and the caliber of gauge of the firearm. The sale or other disposition of a firearm shall be recorded by the licensed dealer not later than seven (7) days following the date of such transaction. When such disposition is made to a non-licensee, the firearms transaction record, Form 4473, obtained by the licensed dealer shall be retained, until the transaction is recorded, separate from the licensee's Form 4473 file and be readily available for inspection. However, when such disposition is made to a licensee, the commercial record of the transaction shall be retained, until the transaction is recorded, separate from other commercial documents maintained by the licensed dealer and to be readily available for inspection.

21. Information recorded in an ATF Form 4473 and/or the Acquisition and Disposition record book, is information required to be kept in the records of a federal firearms licensee. An FFL or employee violates Section 18 U.S.C § 924(a)(1)(A) when he/she knowingly makes a false statement or representation on the Acquisition and Disposition (A&D) book or on an ATF Form 4473 (Firearms Transaction Record).

22. In summary, on March 27, 2020, **ABDULLAZIZ** suggests CI-2 purchase the firearms when CI-1 informs him that he/she is a felon. **ABDULLAZIZ** accepts payment from CI-1, even though CI-2 is filling out the required ATF Form 4473. **ABDULLAZIZ** conducts the background check on CI-2 and certifies the CI-2 is the actual purchaser, however, **ABDULLAZIZ** then, knowingly, transfers (2) firearms to CI-1 having just been told by CI-1 he was a felon. On April 16, 2020, **ABDULLAZIZ** sells a firearm to CI-1 without having CI-1 complete an ATF Form 4473. **ABDULLZIZ** does not complete the required background check on CI-1 for the sale of this firearm and sells it to CI-1 knowing CI-1 to be a felon. **ABDULLAZIZ** takes a deposit for a .50 Caliber rifle from CI-1 and provides an invoice in CI-2's name. **ABDULLAZIZ** is told by CI-1 he intends to take the firearms to Mexico and **ABDULLAZIZ** does not stop the sale. **ABDULLAZIZ** allows CI-1 to order a second firearm from the wall after just providing details to another person on the phone about the firearm. **ABDULLAZIZ** allows CI-1 to get CI-2 from the vehicle to conduct the paperwork for the sale of the second firearm. **ABDULLAZIZ** takes payment for the firearm from CI-1 and conducts the background check on CI-2. CI-1 tells **ABDULLAZIZ**, he/she resells guns. **ABDULLAZIZ** provides counsel to CI-1 about how the firearms laws work and having intent to flip guns. **ABDULLAZIZ** allows CI-1, being a felon to exit the building with both firearms.

23. Due to the facts outlined above and to the best of You Affiant's knowledge and belief, all statements made in this affidavit are true and correct. Based on these facts, Your Affiant believes probable cause exists for the issuance of an arrest warrant for Khalid Abdullah **ABDULLAZIZ** for Title 18 U.S.C § 922(d)(1), Title 18 U.S.C § 922(b)(5), Title 18 U.S.C. § 924(a)(1)(A), and aiding, abetting, counseling, or inducing the above in violation of Title 18 U.S.C. § 2.

James Settelen
Special Agent, ATF

The foregoing affidavit was sworn to telephonically on this 24TH day of April, 2020

HONORABLE DENA H. PALERMO
U. S. Magistrate Judge