**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CASE NO. 4:20-CR-26-4** |
| **v.** | § | |
| | § | |
| **KHALID ABDULAZIZ** | § | |

## GOVERNMENT'S RESPONSE TO DEFENSE MOTION TO DISMISS COUNTS 1-6, 8, 10-12, AND 15 OF THE INDICTMENT

The United States of America, by and through Jennifer B. Lowery, Acting United States Attorney, and Jennifer Stabe, Assistant United States Attorney, for the Southern District of Texas, files this Response to the Defendant's Motion to Dismiss Counts 1-6, 8, 10-12, and 15 of the Indictment.   The government respectfully requests this Court deny defendant's motion to dismiss because 1) the defendant's status as a Federal Firearms Licensee is not dispositive on this issue; 2) there is no general rule of lenity requiring the prosecution to forego a felony when a misdemeanor may be applicable; 3) there is no circuit split on this issue, and therefore, the Government correctly charged the defendant with a felony for aiding and abetting a false statement.

**I.**

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to move to dismiss an indictment for failure to charge an offense.   Rule 7(c) requires a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). These requirements are essentially the same as those of the Sixth Amendment, which mandates that an indictment must: "(1) enumerate each prima facie element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double

jeopardy defense against future prosecutions." *United States v. Gaytan,* 74 F.3d 545, 551 (5th Cir. 1996).   The Government is not required to prove its case in the indictment, but simply to set forth the elements of the offense with "sufficient clarity and certainty to apprise the accused of the crime with which he is charged." *United States v. Kay,* 359 F.3d 738, 742 (5th Cir. 2004) (quoting *United States v. Bearden,* 423 F.2d 805, 810 (5th Cir. 1970).   Finally, on a motion to dismiss an indictment, the Court must take the indictment's allegations as true. *See Id.* (quoting *United States v. Hogue,* 132 F.3d 1087, 1089 (5th Cir.1998)).

The Government agrees the Fifth Circuit has held "if a question of law is involved, then consideration of the motion is generally proper." *United States v. Flores,* 404 F.3d 320, 324 (5th Cir. 2005) (citing *United States v. Korn,* 557 F.2d 1089, 1090 (5th Cir. 1977).   That is not the case here.   Abdulaziz's status as a Federal Firearms Licensee is not the only fact at issue.   Instead, the Court must examine the false statement during a purchase of a firearm statute as applied to the facts alleged in the Indictment, and determine whether Defendants' conduct, as charged, reflects a proper interpretation of criminal activity under the relevant criminal statutes.

## II.

## <u>FACTUAL BACKGROUND</u>

The defendant Khalid Abdulaziz is a Federal Firearms Licensee (FFL).   That fact, however, is not the only fact required for the Court to make its ruling.   The misdemeanor statute defense cites, Title 18 United States Code § 924(a)(3)(A), is not a proper charge for the facts of this case.   The Government is not alleging the defendant himself made a false statement on his own records.   The misdemeanor charge is specifically tailored only for FFL's who make false statements in their own records and books.

The evidence and facts in this case support that the defendant clearly aided and abetted

others in making false statements and therefore, committed a felony under Title 18 United States Code § 924(a)(1)(A).   The defendant knowingly and repeatedly sold to individuals that were straw purchasers making false statements on the ATF Form 4473.   The straw purchasers indicated on the ATF Form 4473 that they were the actual buyers of the firearms when in fact, they were not.

During every firearm transaction, the purchaser is legally required to fill out an ATF Form 4473, also called a Firearms Transaction Record.   The ATF Form 4473 contains questions regarding identifying information of the buyer of the firearm.   Additionally, the 4473 contains a question about whether the purchaser is the actual transferee or buyer of the firearm.   If an individual answers "no" to that question, a firearms licensee cannot transfer the firearm to the purchaser.   By repeatedly selling to known straw purchasers, Abdulaziz allowed close to 500 guns to be transferred to the hands of individuals engaging in trafficking firearms to members of the Cartel del Noreste, a Mexican transnational drug trafficking organization.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began their investigation in December of 2019, after learning of a shootout occurring between suspects from the Cartel Del Noreste (CDN) and Mexican Security Forces in Villa Union, Coahuila, Mexico. More than 50 suspects dressed in military fatigues and tactical gear arrived in eight light armored vehicles marked with "CDN."   Over twenty individuals died during the shootout.   As a result, Mexican authorities conducted a series of operations targeting CDN, which led to firearms being seized from the CDN.   One of those rifles was a JNC MFG, Model: M2-HB, Caliber .50 BMG rifle with serial number 27080.   A trace revealed the firearm was purchased on or about November 19, 2019, by Israel Chapa, Jr. from Khalid Abdulaziz, the sole owner and operator of Zeroed In Armory (ZIA), thirteen days before the shootout occurred.

Further investigation revealed that Israel Chapa, Jr. purchased one hundred fifty-three

3

(153) firearms at an estimated cost of $248,547.28 from Abdulaziz between July 2019 and December 2019.   The investigation also revealed the involvement of an individual named Isaac Rodriguez.   Phone records showed hundreds of calls between Rodriguez and Abdulaziz, however, Rodriguez himself, never made a purchase from Abdulaziz at ZIA.   A total of nine individuals were identified as straw purchasers of firearms from Abdulaziz.

Statements made by these individuals revealed on every occasion, none of the nine purchasers ever placed an order with Abdulaziz at ZIA.   Instead, Rodriguez placed all the orders directly with Abdulaziz at ZIA.   The purchasers all paid in cash, many did not know what number or type of firearms they were picking up, and many of the straw purchasers told law enforcement that the firearms were already on display and ready for pick up, showing Abdulaziz was aware they were coming.   The vast majority of firearms purchased were high powered semi-automatic assault rifles, such as AK-47's, Barrett .50 caliber rifles, 7.62x39 rifles, and .308 caliber rifles, all firearms favored by cartels.   On numerous occasions, the straw purchasers were buying guns in bulk, including purchases of thirty-five (35) AK-47's on July 17, 2019 by Israel Chapa, Jr., one hundred five (105) 7.62 rifles purchased by Javier Cavazos, III on December 12, 2019, thirty-four (34) 7.62 rifles purchased by Steven Baranowski, III on March 15, 2020, and six (6) .50 caliber rifles purchased on March 20, 2020 by Francisco Jacinto.   The purchases above do not even equal half of the firearms purchased by this gun trafficking organization.

On January 7, 2020, ATF Special Agents Cardona and Smith conducted a voluntary interview with Abdulaziz at ZIA.   During that interview Agents Cardona and Smith informed Abdulaziz that a firearm he sold to Chapa, Jr. was recovered in Mexico after a shooting.   The Agents asked that Abdulaziz contact them if any of the individuals discussed came back to his store.   Within days of this conversation, Abdulaziz continued to sell to the straw purchasers.

4

One particular transaction on March 24, 2020, highlights Abdulaziz's knowledge and participation in the scheme to knowingly aid and abet others to make false statements on ATF Form 4473's.   On March 24, 2020, Mario Reyna went to ZIA.   Upon entering the store, Reyna stated he was there to "pick up four Barretts for Israel."   According to Reyna, Abdulaziz told him the rifles were ready to be picked up.   At that point, Israel Chapa, Jr. also came into ZIA.   Reyna stated Abdulaziz said to Chapa, Jr. "ATF got you scared as fuck huh."   Abdulaziz then had Reyna fill out the ATF Form 4473 and completed the purchase with Reyna, knowing that Reyna was not the actual buyer of the firearms.   At no time did Abdulaziz contact ATF to let them know he had encountered Chapa, Jr. or any of the other individuals involved in the gun trafficking organization.

### III.

### PROCEDURAL HISTORY

On July 15, 2020, the Defendant was indicted on eleven counts of Aiding and Abetting a False Statement on an ATF 4473 Form in violation of Title 18, United States Code, §§ 924(a)(1)(A) and 2, one count of Selling a Firearm to a Prohibited Person in violation of Title 18, United States Code, § 922(d)(1), and one count of Receiving a Firearm for Use in a Felony in violation of Title 18, United States Code, § 924(b). (Dkt. No. 47).   On February 22, 2021, the Defendant filed a Motion to Dismiss Counts 1-6, 8, 10-12, and 15 of the Indictment.

### IV.

### THERE IS NO GENERAL RULE OF LENITY REQUIRING THE GOVERNMENT TO FOREGO FELONY PROSECUTIONS

The defense automatically jumps to using the rule of lenity to support its position that the Government is precluded from charging Abdulaziz under the felony provision of Title 18, United States Code § 924(a)(1)(A).   The Sixth Circuit in *Carney*, addresses lenity stating "there is no

general rule of lenity which requires the government to forego a felony prosecution simply because a misdemeanor statute may also be applicable." *United States v. Carney,* 387 F.3d 436, 445 (6th Cir. 2004) *citing* to *United States v. Schaffner*, 715 F.2d 1099, 1102 (6th Cir. 1983).   The Supreme Court has continued to limit the application of the rule of lenity and applies it only when, "after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *Shular v. United States,* 140 S.Ct. 779, 787 (2020).   Justice Kavanaugh elaborated in a concurring opinion clarifying that the "rule of lenity rarely comes into play," and courts must find "not just ambiguity but grievous ambiguity before resorting to the rule of lenity." *See id.* at 788.   Here, the misdemeanor statute clearly does not apply to the facts alleged.   Aiding and abetting applies to the entirety of Title 18.   The only proper charge for the defendant's conduct of selling firearms to individuals he knew were straw purchasers is through using Title 18, United States Code §§ 924(a)(1)(A) and 2.

**V.**

## THERE IS NO CIRCUIT SPLIT ON THIS ISSUE; THEREFORE, THE GOVERNMENT PROPERLY CHARGED THE DEFENDANT UNDER 18 USC 924(a)(1)(A) AND 2

There is no circuit split on this issue.   Every Circuit Court that has considered the issue agrees – FFL's may be charged under the felony provision of the statute. *See United States v. Carney,* 387 F.3d 436 (6th Cir. 2004), *United States v. Al-Muqsit,* 191 F.3d 928 (8th Cir. 1999), and *United States v. McCullough,* 348 F.3d 620 (7th Cir. 2003).   The law defendant presents as a Fourth Circuit opinion affirming the District Court's opinion in *Percival,* is actually an unpublished opinion that fails to address the issue of whether a Federal Firearms Licensee can be charged with the felony of aiding and abetting a false statement during the purchase of a firearm under Title 18, United States Code §§ 924(a)(1)(A) and 2. *See United States v. Percival,* 727

F.Supp 1015 (E.D.Va. 1990), *aff'd* 932 F.2d 964 (4th Cir. 1991) (unpublished).   Defense cites to only the District Court opinion throughout their motion, and not to an opinion issued by the Fourth Circuit. *See* Dkt. No. 152, pages 4 and 5.

This is a case of first impression for the Fifth Circuit.   While a San Antonio District Court in 1998 did grant a motion to reduce a defendant's punishment for a conviction under Title 18, United States Code §§ 922(b)(5) and 2 to a misdemeanor, the Fifth Circuit did not rule on or address the issue at hand.   Not only is the statute addressed not the same as in the indictment against Abdulaziz, but also, the only mention of the District Court decision to reduce the punishment to a misdemeanor is in the recitation of the background of the case. *See Castillo-Perales v. Mukasey,* 298 Fed.Appx. 366, 367-68 (5th Cir. 2008).

The Sixth Circuit, however, has addressed the exact issue presented here and ruled in favor of the Government.   In *Carney*, the Sixth Circuit held the government can charge a federal firearms licensee under the felony provision of the statute criminalizing making false statements." *Carney,* 387 F.3d at 446.   The Government in *Carney* charged two Federal Firearms Licensees, operating a gun shop in Michigan, with aiding and abetting the making of false statements in a scheme involving at least six different straw purchasers buying firearms that were then transferred to Johnson, a convicted felon, using Title 18, United States Code § 924(a)(1)(A), identical to the statute used against Abdulaziz. *Id.* at 442.   Analogous to the facts at issue here, the FFL's in *Carney* "repeatedly collaborated with a convicted felon's ongoing unlawful conspiratorial scheme, by means including their willful acceptance of fraudulent official documentation, which exposed them to 'accomplice' felony liability" and the Court held the government was "not constrained to instead prosecute…only under the section 924(a)(3)(A) misdemeanor rule." *Id.* at 446.

Further, in the Sixth Circuit, the Court states "the interplay of § 924(a)(1)(A) and §

924(a)(3)(A), respectively, does *not* pose an instance whereby general statutory language is entirely superseded by specific statutory terms which address a precise matter." *Id.* at 444 (quoting *Edmond v. United States*, 520 U.S. 651, 657 (1997)).   Contrary to defendant's point, the Sixth Circuit in *Carney* actually states "[a]lthough countless instances undoubtedly exist wherein a defendant legitimately could be charged only under one section in controversy or the other, but not either in the alternative nor both, such a circumstance is *not* presently framed herein" *Id.* and *see* Dkt. No. 152, page 6.)   The Court continues, "rather, the defendants' conduct alleged in the 924(a)(1)(A) counts of conviction could have sustained convictions under *either,* or *both* referenced sections" *Id.*

The Sixth Circuit also clearly dismissed the opinion in *United States v. Wegg,* 919 F.Supp.898 (E.D.Va. 1996) relied on by defense.   The Court found the noncontrolling out-of-circuit inferior court decision of *Wegg* "poorly reasoned and inconsistent with all published circuit court authority on the matter." *Id.* at n.7.

The Eighth Circuit has also ruled in a factually similar case, that FFLs can properly be charged with a felony for knowingly making false statements on gun transaction records. *See Al-Muqsit,* 191 F.3d at 932-36.   The Court held "there is simply nothing in the language or legislative history of the statute…to indicate Congress intended to do anything more than allow for the option of misdemeanor prosecution for licensed dealers who make false statements on ATF forms, while leaving intact the felony prosecution structure for those…whose flagrant and repeated actions in accepting false ATF forms from straw purchasers…warrants felony punishment." *Id.* at 935. While the Government in *Al-Muqsit* charged the two FFLs with conspiracy to violate Title 18 United States Code § 924(a)(1)(A), instead of aiding and abetting, the same reasoning the Court used applies here.

In *Al-Muqsit*, the licensed dealers sold over 100 firearms to straw purchasers who transferred them to other co-conspirators who resold them at a substantial profit on the streets of Chicago. *Id*. at 932.   Similarly, in the case at issue, Abdulaziz sold over 500 firearms to straw purchasers over the course of fifty transactions, who transferred them to others involved in the gun trafficking scheme who then sent them to cartel members in Mexico.   To date, at least forty firearms have been recovered by Mexican authorities that have been tied to purchases made by the individuals charged in this case.   The Eighth Circuit correctly stated that without the option to charge dealers with a felony under Section 924, "it would be impossible for law enforcement to 'go after' the first link in a chain which results in a plentiful supply of firearms for use in violent crime." *Id.* at 936.   It is hard to believe that Congress would have "intended to insulate from punishment dealers…who knowingly participate in an illegal gun trafficking scheme that puts hundreds of firearms in the hands of…gang members," or in this case, violent cartel members. *Id*.

In the Seventh Circuit, a similar issue has been addressed as well.   While the Court does not discuss the same theory of liability of aiding and abetting or conspiracy to commit a violation of Title 18, United States Code § 924(a)(1)(A), in *McCullough*, the Court held licensed dealers can in fact be charged with felony offenses. *See McCullough,* 348 F.3d at 628.   This case stands in direct contradiction of the defense's argument that a licensed dealer may only be charged with a misdemeanor and is therefore persuasive authority to assist the Court in making its decision.

## VI.

## <u>CONCLUSION</u>

All Circuit courts that have ruled on the issue have found the Government may proceed with felony charges against Federal Firearms Licensees.   There is no circuit split on this issue, and therefore, this Honorable Court should look to the decisions of the Sixth, Eighth, and Seventh

Circuits cited above as instructive on the issue at hand.   The Government meets all the requirements of a proper indictment.   The law and the facts fit the charges filed against Abdulaziz. Not only does the language of Title 18, United States Code § 924(a)(3)(A) not fit the facts of this case, but also, the repeated participation and acceptance of false ATF 4473 Forms from straw purchasers warrants felony punishment.

WHEREFORE, PRESMISES CONSIDERED, the Government requests that the Court deny the defendant's Motion to Dismiss Counts 1-6, 8, 10-12, and 15 of the Indictment.

Respectfully submitted,

JENNIFER B. LOWERY
Acting United States Attorney


*/s/ Jennifer Stabe*
Jennifer Stabe
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on March 12, 2021, I filed this response with the clerk of court for the U.S. District Court, Southern District of Texas, and served a copy of this response on defendant's counsel by email.

*/s/ Jennifer Stabe*
JENNIFER STABE
Assistant United States Attorney

## CERTIFICATE OF CONFERENCE

Counsel conferred with Cordt Akers, counsel for Mr. Abdulaziz, and he has stated they are opposed to the Government's response.

*/s/ Jennifer Stabe*
Assistant United States Attorney

10