United States District Court
Southern District of Texas

**ENTERED**

March 07, 2024

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-20-26-4 |
| | § | |
| | § | CIVIL ACTION NO. H-23-2971 |
| | § | |
| | § | |
| KHALID ABDULAZIZ | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION
TO VACATE SENTENCE UNDER 28 U.S.C. § 2255**

Federal prisoner Khalid Abdulaziz, (BOP #17193-579), filed a motion through counsel to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255. (Docket Entry No. 837). The Government responded, and Abdulaziz replied. (Docket Entry No. 849, 857). Based on the motions and responses, the record, and the applicable law, the court denies Abdulaziz's motion. The reasons are set out below.

**I.      Background**

In May 2021, a federal grand jury indicted Abdulaziz and 13 codefendants in a 35-count second superseding indictment. (Docket Entry Nos. 1, 199). The indictment arose from a multi-agency, international investigation into a firearms trafficking ring involving Abdulaziz's business, Zeroed In Armory, LLC, which is a federal firearms licensee in Pearland, Texas. (*Id.*). Abdulaziz, the only employee of Zeroed In, was named in 14 counts of the second superseding indictment: 12 counts of aiding and abetting false statements on an ATF 4473 form, in violation of 18 U.S.C. § 924(a)(1)(A) and 18 U.S.C. § 2 (counts 1-2, 5-13, and 16); one count of selling a firearm to a prohibited person, in violation of 18 U.S.C. § 922(d)(1) (count 14); and one count of receiving a firearm for use in a felony, in violation of 18 U.S.C. § 924(b) (count 15). (Docket Entry No. 199).

The charges were based on an investigation begun when Mexican law-enforcement officers requested the assistance of United States Alcohol, Tobacco, and Firearms (ATF) agents.  Mexican officers had recovered firearms manufactured in the United States during an investigation into a Mexican drug cartel.  (Docket Entry No. 694, pp. 13-14).  The recovery of these firearms led ATF agents to investigate Zeroed In and Abdulaziz.  (*Id.* at 14).  Their investigation determined that Abdulaziz was complicit in an extensive scheme to sell firearms to straw purchasers,[1] convicted felons, and other prohibited persons, who then illegally transported the firearms to Mexico.  (*Id.* at 14-18, 42).  Abdulaziz allowed straw purchasers to falsify ATF 4473 forms by certifying that the purchaser was the person acquiring the firearms when the firearms were actually being purchased and paid for by others.  (*Id.* at 43).  During interviews with ATF agents, Abdulaziz admitted that he knew he should not have completed certain transactions.  (*Id.* at 18).  Abdulaziz sold at least 400 firearms to various straw purchasers, and he had reason to believe that the straw purchasers were smuggling the firearms into Mexico.  (*Id.* at 43).

In April 2022, Abdulaziz entered into a plea agreement with the Government, in which he agreed to plead guilty to six of the charges of aiding and abetting a false statement on an ATF 4473 form.  (Docket Entry No. 467).  The statutory maximum penalty for each charge was five years in prison, followed by no more than three years of supervised release.  (*Id.* at 1-2).  Abdulaziz acknowledged in the written plea agreement that he understood that the court would determine his sentence, that the court was not bound by any sentencing range calculated under the Sentencing Guidelines, and that any estimate of a sentence he may have received from his counsel, the

---

[1]A straw purchaser is one who acquires a firearm for another person while falsely claiming to be the actual purchaser.  (Docket Entry No. 694, p. 14).  Under federal law, the actual purchaser must complete ATF Form 4473, which provides the information necessary to complete a federal background check on the purchaser.  (*Id.*).  One who falsely completes the form claiming to be the actual purchaser is a straw purchaser.  (*Id.*).

Government, or the United States Probation Office was not binding and did not induce his guilty plea. (*Id.* at 3-4, 5-6). In exchange for Abdulaziz's plea, the Government agreed to dismiss the remaining charges against him,[2] to not further prosecute him for the conduct giving rise to the offenses, and "to request that the Court run the sentences concurrently instead of consecutively." (*Id.* at 4). The plea agreement specifically stated that Abdulaziz understood that "should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea." (*Id.* at 6).

Abdulaziz and his counsel also signed an addendum to the plea agreement. (*Id.* at 34). In the addendum, defense counsel affirmed that he had "carefully reviewed every part of th[e] plea agreement with" Abdulaziz and that Abdulaziz's decision to enter the plea agreement was knowing and voluntary. (*Id.*). Abdulaziz affirmed that he "fully underst[ood] all [his] rights with respect to the indictment," that he had "read and carefully reviewed every part of th[e] plea agreement with [his] attorney," and that he understood and voluntarily agreed to its terms. (*Id.*).

At his rearraignment hearing, Abdulaziz, a college graduate who had completed one year of law school, assured the court that he understood that, even though the Government would recommend that his sentences be run concurrently, the final sentence would be decided by the court and the court was not bound to follow the Government's recommendation. (Docket Entry No. 785, pp. 18-19). He also assured the court that he understood that if the court elected not to follow the Government's recommendation concerning concurrent sentences, he was "not going to be able to then say [he] want[s] to get out of [his] guilty plea." (*Id.* at 19). He affirmed that he had read the entire plea agreement and understood all of its terms. (*Id.* at 22). The Government read the factual basis for the plea agreement, and Abdulaziz affirmed that the facts set out by the

---

[2]The Government had previously dismissed count 15 against Abdulaziz. (Docket Entry No. 446).

Government were true and correct.  (*Id.* at 28-43).  Abdulaziz assured the court that no one had promised him anything other than what was in his plea agreement, that no one had threatened or forced him to enter his guilty plea, that he was pleading guilty to these counts because he was guilty of these offenses, and that he was doing so freely and voluntarily.  (*Id.* at 49-50).  The court found that Abdulaziz was competent, understood the charges against him, understood the rights he was giving up, understood the consequences of his plea, and was entering the guilty plea knowingly and voluntarily.  (*Id.* at 51).  The court then accepted his guilty plea.  (*Id.*).

After accepting Abdulaziz's plea, the court ordered the Probation Office to prepare a Presentence Investigation Report (PSR).  (Docket Entry No. 694).  Abdulaziz's PSR included adjustments to his offense level for the number of firearms involved, the use of his business to engage in trafficking, his willful blindness to evidence that the firearms he was selling were being transported out of the United States, and his abuse of his position of public or private trust to facilitate or conceal the offenses.  (*Id.* at 44-45).  The PSR also included a two-level reduction in his offense level for his acceptance of responsibility.  (*Id.* at 46).  These adjustments resulted in a total offense level of 37.  (*Id.*).  Abdulaziz's criminal history score was zero, resulting in an advisory Guidelines sentencing range of 210 to 262 months in prison.  (*Id.* at 48-49).

Abdulaziz raised numerous objections to the PSR, including to the trafficking enhancement, the exportation enhancement, and the abuse of trust enhancement.  (Docket Entry No. 626).  In response, the Government contended that those enhancements were properly applied based on the facts underlying the relevant counts.  (Docket Entry No. 683).  At Abdulaziz's sentencing hearing, the court heard argument on the objections and overruled the objections to the trafficking enhancement and the exportation enhancement but sustained the objection to the abuse

4

of position enhancement. (Docket Entry No. 787, pp. 4-27, 53-58). These rulings reduced Abdulaziz's advisory Guidelines sentencing range to 168 to 210 months. (*Id.*).

When the court asked for recommendations on sentencing, the Government requested that the court sentence Abdulaziz to five years in prison on each count, with the sentences to run concurrently. (*Id.* at 29-30). In response, defense counsel emphasized that Abdulaziz did not initiate the scheme or lead the organization. (*Id.* at 35-37). Counsel asserted that Abdulaziz was guilty of "willful blindness" to certain "red flags" but not a hardened criminal. (*Id.* at 38-48). Defense counsel requested concurrent sentences of 18 to 24 months in prison, which he argued was in line with the sentences that a number of codefendants had received. (*Id.* at 48).

After considering extensive argument from both the Government and Abdulaziz's counsel, the court rejected both recommendations. (*Id.* at 58-64). The court noted that Abdulaziz was critical to the success of the entire scheme because he was the federal firearms licensee who enabled the purchases of the firearms. (*Id.*). The court also noted the seriousness of the offenses and the number of firearms involved. (*Id.*). Based on the totality of the circumstances, the advisory Guidelines sentencing range, and the factors listed in 18 U.S.C. § 3553(a), the court sentenced Abdulaziz to a below-Guidelines sentence of concurrent 5-year prison terms on counts 1, 6, 8, 10, and 11, followed by a consecutive 5-year prison term on count 5, for a total sentence of 10 years. (Docket Entry Nos. 758; 787, pp. 63-64).

Despite the appeal waiver in Abdulaziz's plea agreement, he filed a notice of appeal to challenge the sentence. (Docket Entry No. 751). Before any brief was submitted, Abdulaziz voluntarily dismissed the appeal. (Docket Entry No. 802). He filed a timely motion to set aside his sentence under § 2255, raising three claims of ineffective assistance of counsel. (Docket Entry No. 837). Each claim is analyzed below.

## II.      The Applicable Legal Standards

### A.      Motions under 28 U.S.C. § 2255

Postconviction relief under 28 U.S.C. § 2255 is limited to errors of constitutional dimension that could not have been raised on direct appeal and that, if left unaddressed, would result in a complete miscarriage of justice. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *see also United States v. Rodriguez-Castro,* 814 F. App'x 835, 837-38 (5th Cir. 2020) (per curiam). Because of these limitations, a federal defendant may move to vacate, set aside, or correct his sentence under § 2255 only if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeds the statutory maximum; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

### B.      Ineffective Assistance of Counsel

Abdulaziz raises three claims of ineffective assistance of counsel relating to his guilty plea and his sentence. An ineffective assistance of counsel claim raised after entry of a guilty plea is subject to the same standard as any other ineffective assistance claim. To prevail, the defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of the *Strickland* test requires the defendant to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Reasonableness is measured against prevailing professional norms and is viewed under the totality of the circumstances. *Id.* at 688. The second prong of the *Strickland* test requires the defendant to show that "it is reasonably

likely the result would have been different," if not for counsel's deficient performance. *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (cleaned up).

Under both prongs, judicial scrutiny is highly deferential, and the defendant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. The court presumes that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Because a defendant must satisfy both prongs of the *Strickland* test, even if counsel's performance was professionally unreasonable, the judgment or sentence will not be set aside unless it was affected by the deficiency. *Id.* at 691. To establish prejudice, a defendant must show that the result of his criminal case would have been different without counsel's deficient performance "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999). In the context of a guilty plea, the defendant can establish prejudice by showing that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Valdez*, 973 F.3d 396, 402-03 (5th Cir. 2020). To show prejudice in relation to sentencing issues, the defendant must show that, but for counsel's errors concerning the sentence, he would have received less time in prison. *See United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)).

### C.     Evidentiary Hearing

A defendant seeking relief under § 2255 is entitled to an evidentiary hearing on his claims "unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Allen*, 918 F.3d 457, 460 (5th Cir. 2019) (quoting *United States v. Harrison*, 910 F.3d 824, 826-27 (5th Cir. 2018)).  Neither conclusory allegations nor "speculative and unsupported accusations of government wrongdoing [will] entitle a defendant to an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013).  If the defendant fails to meet his burden of proof at the pleadings stage, an evidentiary hearing is unnecessary.  *See Cervantes*, 132 F.3d at 1110; *see also Sanders v. United States*, 373 U.S. 1, 21 (1963) (§ 2255 does not require the court to hold an evidentiary hearing "no matter how vague, conclusory, or palpably incredible his allegations may be"); *United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) ("The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief." (quoting *Clark v. Collins,* 19 F.3d 959, 964 (5th Cir. 1994))).

## III.     Analysis

### A.     The Claim of Ineffective Assistance of Counsel in Failing to Appeal on the Ground that the Government Breached the Plea Agreement

In his first claim, Abdulaziz alleges that defense counsel provided ineffective assistance by failing to file an appeal based on the Government breaching the plea agreement by advocating for the offense-level enhancements included in the PSR.[3]  (Docket Entry No. 837, pp. 9-11).  The Government contends that this claim is meritless because the undisputed facts show that it did not

---

[3]While Abdulaziz's plea agreement includes a waiver of the right to an appeal, he could appeal to claim a breach of a plea agreement.  *See United States v. Roberts*, 624 F.3d 241, 244 (5th Cir. 2010).

breach the plea agreement.  (Docket Entry No. 849, pp. 9-14).  In reply, Abdulaziz insists that the Government's arguments in support of the offense-level enhancements in the PSR were a breach of his plea agreement.  (Docket Entry No. 857, pp. 1-4).

The court first considers whether the Government breached the plea agreement, because defense counsel cannot provide ineffective assistance by failing to file an appeal based a non-existent breach.  *See, e.g., United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").

"In evaluating whether a plea agreement was breached, we apply general principles of contract law, construing the terms strictly against the government as drafter, to determine whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement."  *United States v. Hebron*, 684 F.3d 554, 558 (5th Cir. 2012) (quoting *United States v. Elashyi,* 554 F.3d 480, 501 (5th Cir. 2008)) (cleaned up).  A plea agreement is breached only when "the Government's conduct was inconsistent with a reasonable understanding of its obligations" under the agreement.  *United States v. Casillas,* 853 F.3d 215, 217 (5th Cir. 2017) (citing *United States v. Hinojosa*, 749 F.3d 407, 413 (5th Cir. 2014)).  Such a situation may arise "when the Government agrees to one thing at the plea but then actively advocates for something different at sentencing."  *United States v. Loza-Gracia*, 670 F.3d 639, 644 (5th Cir. 2012).  But "[a]bsent some provision in the plea agreement, . . . there is no level of enthusiasm the government must display when making a [sentencing] recommendation."  *Casillas*, 853 F.3d at 218 (citing *United States v. Benchimol*, 471 U.S. 453, 455 (1985) (per curiam)).  An "attempt to hold the Government to promises that are not contained in the plea agreement amounts to an unreasonable understanding

9

of the plea agreement." *United States v. Shabazz*, 844 F. App'x 778, 779 (5th Cir. 2021) (mem. op.) (citing *Hinojosa*, 749 F.3d at 413, and *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011)). "The defendant bears the burden of demonstrating the underlying facts that establish breach by a preponderance of the evidence." *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013) (quoting *United States v. Roberts,* 624 F.3d 241, 246 (5th Cir. 2010)).

Abdulaziz's claim that the Government breached the plea agreement is conclusively refuted by the plain language of his plea agreement and the transcript of the sentencing hearing. The Government promised three things in Abdulaziz's plea agreement: (1) to dismiss the remaining counts of the indictment against him; (2) to not further criminally prosecute him for offenses arising from the conduct charged in the indictment; and (3) to ask the court to run the sentences imposed on the six counts to which Abdulaziz was pleading concurrently rather than consecutively. (Docket Entry No. 467, p. 4). At the sentencing hearing, the Government asked the court to sentence Abdulaziz to five years in prison on each count, with the sentences to run concurrently. The Government specified that it made this request "pursuant to the plea agreement." (Docket Entry No. 787, pp. 29-30). At no time during the hearing did the Government ask the court to sentence Abdulaziz to consecutive sentences. The record does not support a conclusion that the Government breached the plea agreement.

Abdulaziz contends that the Government's agreement to advocate for concurrent sentences was an implicit agreement to advocate for a total sentence of no more than five years and to argue against any offense-level enhancements that would increase his advisory Guidelines sentencing range. Abdulaziz contends that the Government's argument in support of the offense-level enhancements in the PSR breached the plea agreement because those enhancements raised his advisory Guidelines sentencing range above five years. But the plea agreement did not require the

Government to ask the court to impose a sentence of only five years.  Nor did the agreement require the Government to accede to Abdulaziz's objections to the PSR.  The agreement did not limit what information the Government could provide the court at the sentencing hearing.  In addition, the plea agreement did not contain any agreements specifying or concerning Abdulaziz's relevant conduct, his base offense level, the applicable offense-level enhancements, or the calculation of the Guidelines range.  Abdulaziz's assumption that the Government's promise to ask for concurrent sentences meant that it would simply agree to his objections to any applicable offense-level enhancements included in the PSR is neither supported by the plain language of the plea agreement nor a reasonable understanding of it.

Abdulaziz relies on *United States v. Munoz*, 408 F.3d 222 (5th Cir. 2005), but that case is distinguishable.  The plea agreement in *Munoz* included specific statements on the applicable offense-level enhancements.  *Id.* at 224-25.  Despite these statements, the PSR used different offense-level enhancements, resulting in a significantly higher advisory sentencing range.  *Id.* at 225.  At the sentencing hearing, the Government argued for the enhancements in the PSR rather than those in the plea agreement.  *Id.* at 227.  The Fifth Circuit held that the Government breached the plea agreement.  *Id.*; *see also United States v. Purser,* 747 F.3d 284, 287 (5th Cir. 2014) (when the plea agreement contained a specific agreement as to the applicable offense-level enhancements, the Government breached the plea agreement by arguing for additional enhancements at sentencing); *Roberts*, 624 F.3d at 245-46 (the Government breached the plea agreement by advocating at sentencing for a base offense level different than that agreed to in the plea agreement).

In Abdulaziz's case, there is no such inconsistency between the plea agreement and the Government's position at the sentencing hearing.  His plea agreement did not specify offense-level

enhancements.  "Considering the U.S. Attorney's Office does not have control or oversight of PSR recommendations made by U.S. Probation Officers, this court cannot ask a U.S. Attorney to do more than stand by a plea agreement it has made."  *Loza-Gracia*, 670 F.3d at 644.  That is exactly what the Government did at Abdulaziz's sentencing hearing—it advocated for the concurrent sentence provision contained in the plea agreement.

Abdulaziz also contends that the Government's promise to ask for concurrent sentences was really a promise that it "would not advocate for a greater sentence than five years."  (Docket Entry No. 837, p. 10).  This contention is not based on the plain language of the plea agreement and is not a reasonable understanding of it.  But even if it were, the transcript of the sentencing hearing shows that the Government did what Abdulaziz contends it should have done.  The Government asked the court for a five-year sentence on each count, with all of the sentences running concurrently.  The court's independent decision to sentence Abdulaziz to a longer sentence is not a basis to claim that the Government breached the plea agreement.

Abdulaziz's claim that the Government breached his plea agreement is conclusively refuted by the record, which shows that no such breach occurred.  Because defense counsel did not provide ineffective assistance by failing to appeal a nonexistent breach, s*ee Gibson*, 55 F.3d at 179, Abdulaziz's claim for relief on this basis is denied.

B.      **The Claim of Ineffective Assistance of Counsel for Failing to Move to Withdraw the Plea Before Sentencing**

In his second claim, Abdulaziz contends that defense counsel provided ineffective assistance by failing to move to allow him to withdraw his plea when it became apparent that the Government was going to advocate for offense-level enhancements that would increase his advisory Guidelines sentencing range.  (Docket Entry No. 837, pp. 12-15).  The Government

responds that defense counsel was not ineffective because the offense-level enhancements were not a basis for Abdulaziz to withdraw his plea. (Docket Entry No. 849, pp. 15-17).

As with Abdulaziz's first claim, the court must first consider whether Abdulaziz had any basis to seek to withdraw his plea. Defense counsel cannot provide ineffective assistance by failing to file a baseless motion seeking to do so. *See Gibson*, 55 F.3d at 179 ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Koch*, 907 F.2d at 527 ("This Court has made clear that counsel is not required to make futile motions or objections.").

"A criminal defendant does not have an absolute right to withdraw a guilty plea." *United States v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015). "[A] defendant may withdraw a guilty plea after the court has accepted it, but prior to sentencing, only if he 'can show a fair and just reason for requesting the withdrawal.'" *Id.* (quoting FED. R. CRIM. P. 11(d)(2)(B)). In deciding whether a "fair and just reason" exists, the court considers "whether (1) the defendant asserted his innocence, (2) withdrawal would cause the government to suffer prejudice, (3) the defendant delayed in filing the motion, (4) withdrawal would substantially inconvenience the court, (5) close assistance of counsel was available, (6) the original plea was knowing and voluntary, and (7) withdrawal would waste judicial resources." *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003) (citing *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984)). While the court must consider these factors, the court need not make findings on all of them, and the decision to permit or deny the withdrawal is based on the totality of the circumstances. *Id.* (citing *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir. 1998)).

The record undermines Abdulaziz's contention that he would have been permitted to withdraw his plea had defense counsel filed such a motion. The record shows that there is no basis for the first claim, that Abdulaziz was entitled to withdraw his plea because the Government

breached the plea agreement.  The record also undermines his argument that the sixth *Carr* factor weighs in his favor because he entered his plea believing that he would receive only a five-year sentence.  The rearraignment hearing contains the following colloquy:

> THE COURT:  So, to help me figure out where within those ranges you should be sentenced, I have to consult something called the federal Sentencing Guidelines.  I thought I had the book up here.  I don't.  But there's a big book called the Sentencing Guidelines manual.  Have you discussed the Sentencing Guidelines with your lawyer?
>
> DEFENDANT KHALID ABDULAZIZ:  Yes, your Honor.
>
> . . .
>
> THE COURT:  And those are going to get calculated on your case.  At your sentencing hearing, I'll decide what those guidelines should be.  And once they're calculated, I have to give a lot of weight to what those guidelines recommend; but I'm not required to follow the guidelines.  If I think there's a good reason to do so, I can sentence you lower or higher than the guidelines.  I just can't go [above] those other maximums I just read.  Like, I can't go above the zero to ten years for the gun counts.[4]  Do you understand that the guidelines have to be looked at by me and given consideration but I'm not required to follow them?
>
> DEFENDANT KHALID ABDULAZIZ:  Yes, your Honor.
>
> . . .
>
> THE COURT:  And I'm -- I assume your lawyers gave their best guess about what your guideline range would look like.  But as we stand here in court this morning, no one knows for sure what your guidelines will be.  I don't know, the prosecutor doesn't know, your lawyers don't know.  And *if their best guess turns out to be wrong and the guidelines are higher than your lawyers thought, you're not going to then be able to say, "Oh, well, now I want to get out of my guilty plea."  Do you understand that?*
>
> DEFENDANT KHALID ABDULAZIZ:  *Yes, your Honor.*
>
> . . .
>
> THE COURT:  *The Government's recommending that I run the sentences concurrently which means whatever the sentence is on each count, they won't be*

---

[4]Abdulaziz was rearraigned at the same hearing with a codefendant who had pleaded guilty to a gun offense.  (Docket Entry No. 785).  This reference to the "gun counts" refers to an example the court had given concerning that codefendant's sentence exposure.

*stacked on top of each other.*  So, just hypothetically speaking, if each count were two years, you'd just do the two years.  It wouldn't be five -- it wouldn't be five times two.  It wouldn't be ten years.  *What I want to ask you about today, though, is you understand that's just a recommendation by the Government; and I'm not bound to follow what they recommend?*

DEFENDANT KHALID ABDULAZIZ:  *Yes, your Honor.*

THE COURT:  *And so, if I say, for whatever reason, I don't agree with the Government, I'm not going to follow that recommendation, you're not going to be able to then say you want to get out of your guilty plea.  Do you understand that?*

DEFENDANT KHALID ABDULAZIZ:  *Yes, your Honor.*

. . .

THE COURT:  First, we've talked a lot about the plea agreement.  It's a long agreement.  You each said you've read it.  I think we talked about what the Government's promised you.  What I want to ask is there anything you've been promised to plead guilty that's not in the written agreement, that is, is there some side deal that I don't know about?

DEFENDANT KHALID ABDULAZIZ:  No, your Honor.

(Docket Entry No. 785, pp. 15-16, 18-19, 49-50) (emphasis added).  Abdulaziz may not obtain postconviction relief by contradicting the statements he gave under oath at the rearraignment hearing.  *See United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (citing *United States v. Sanderson*, 595 F.2d 1021, 1022 (5th Cir. 1979) (per curiam)); *see also United States v. Arreola-Ramos*, 204 F.3d 1115, 1999 WL 1328071, at *1 (5th Cir. 1999) ("A petitioner may not contradict the facts to which he has sworn when pleading guilty.").  His unsupported belief that he should have received a maximum sentence of five years would not support a meritorious motion to withdraw his plea.

Abdulaziz also alleges that the first *Carr* factor weighs in his favor because he has consistently maintained his innocence.  This allegation is also conclusively refuted by the record.  Abdulaziz clearly and unequivocally stated at his rearraignment hearing that he was pleading guilty

to the six counts because he was guilty of those offenses.  (Docket Entry No. 785, p. 50).  Based on Abdulaziz's testimony at his rearraignment, his guilty plea is presumptively valid.  *See Matthew v. Johnson,* 201 F.3d 353, 366 (5th Cir. 2000) (when the defendant "stated at his hearing that his plea was freely and voluntarily made, and that he understood the nature of the charges against him and the nature of the constitutional rights he was waiving[, t]hese statements act to create a presumption that in fact the plea is valid").  Abdulaziz cannot show that a motion to withdraw his plea based on contradictions to his testimony at the rearraignment hearing would have been meritorious.

The record shows that Abdulaziz knowingly and voluntarily entered his guilty plea, that he accepted the factual basis for that plea as correct, and that he was fully aware that there were no promises as to what sentence he would receive.  The Government complied with its obligations under the plea agreement.  Abdulaziz has identified no facts establishing a fair and just reason that would give him a basis to withdraw his plea.  Defense counsel did not provide ineffective assistance by failing to file a futile motion to withdraw the plea.  *See Gibson*, 55 F.3d at 179 ("Counsel is not required by the Sixth Amendment to file meritless motions.").  Abdulaziz's motion for relief on this basis is denied.

### C.   The Claim of Ineffective Assistance of Counsel for Failing to Challenge the Constitutionality of Two Sentencing Enhancements

Abdulaziz received a four-level enhancement under United States Sentencing Guidelines § 2K2.1(b)(5) for trafficking in firearms and a four-level sentencing enhancement under U.S.S.C. § 2K2.1(b)(6)(A) for having reason to believe that the firearms would be transported out of the United States.  In his third claim, Abdulaziz alleges that defense counsel provided ineffective assistance by failing to challenge these enhancements as violating the Second Amendment as interpreted by *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).  (Docket Entry

No. 837, pp. 15-20).   The Government responds that *Bruen* does not apply to the Sentencing Guidelines and that, even if it did, these enhancements do not violate the Second Amendment. (Docket Entry No. 849, pp. 17-25).

In *Bruen*, the Supreme Court clarified the constitutional standard for determining whether a statute or regulation violates the Second Amendment.   *See Bruen*, 597 U.S. at 31.   First, a court must determine whether the Second Amendment's plain text covers the challenged conduct.   *Id.* at 17.   If so, "the Constitution presumptively protects that conduct," and the government must "justify its regulation by demonstrating that is consistent with the Nation's historical tradition of firearm regulation."   *Id.* at 24.   Abdulaziz's claim that § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) violate the Second Amendment does not meet either *Bruen* requirement.

### 1.      Whether the Sentencing Guidelines Regulate Conduct

Abdulaziz first asserts that § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) regulate conduct by improperly punishing his right to own and travel with a firearm.   To begin with, these offense-level enhancements were not applied based on Abdulaziz's ownership of, or travel with, a firearm. In addition, Abdulaziz's argument is without merit.

"[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."   *Bruen*, 597 U.S. at 17.   But the Sentencing Guidelines "do not regulate the public by prohibiting any conduct or by establishing minimum and maximum penalties for [any] crime."   *Beckles v. United States*, 580 U.S. 256, 266 (2017) (quoting *Mistretta v. United States*, 488 U.S. 361, 396 (1989)).   Instead, the Sentencing Guidelines "advise sentencing courts how to exercise their discretion within the bounds established by Congress."   *Id.* Because the Sentencing Guidelines do not regulate conduct, several courts have held that the firearm enhancements included in the Sentencing Guidelines are not subject to the Second

Amendment, making *Bruen* inapplicable.  *See, e.g., United States v. Voelz,* 66 F.4th 1155, 1164 (8th Cir. 2023) (noting that *Bruen* did not address the firearm enhancements in the Sentencing Guidelines or find any of them unconstitutional); *United States v. Thompson*, 62 F.4th 37, 43 (1st Cir. 2023) ("It is far from clear that § 2K2.1(b)(4)(B) is unconstitutional."); *United States v. Abdullah*, No. 5:22-cr-00046-4, 2023 WL 3136525, at *2 (S.D.W.V. Apr. 27, 2023) (overruling the defendant's objection that § 2K2.1(b)(4)(B) was unconstitutional under *Bruen* "because a sentence may be based on conduct that cannot form the basis for a criminal conviction"); *United States v. Hampton*, No. CR 21-0306, 2022 WL 4016752, at *12 (D.N.M. Sept, 2, 2022) (noting that there is little connection between the Sentencing Guidelines enhancement provisions and *Bruen* because the Sentencing Guidelines do not prohibit any type of conduct).

Because the Sentencing Guidelines do not regulate conduct, they can be applied without violating the Second Amendment.  Abdulaziz's argument to the contrary is meritless, and his counsel was not ineffective for failing to file a motion on that basis.  *See Gibson*, 55 F.3d at 179 ("Counsel is not required by the Sixth Amendment to file meritless motions.").

### 2.     Whether § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) Regulate Protected Conduct

Alternatively, even if there were a basis to find that the Sentencing Guidelines regulate some conduct, § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) do not regulate conduct that is protected by the Second Amendment.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."  U.S. CONST. AMEND. II.  The Supreme Court has held that individuals have the "right to possess and carry weapons in case of confrontation."  *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008).  But that right "is not unlimited."  *Id.* at 626.  The Second Amendment does not protect an individual's

right to sell firearms, either inside or outside the United States.  *See Teixeira v. County of Alameda*, 873 F.3d 670, 690 (9th Cir. 2017) (en banc) ("[T]he Second Amendment does not independently protect a proprietor's right to sell firearms."); *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011) (unpublished) ("Chafin has not pointed this court to any authority, and we have found none, that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm"); *United States v. Flores*, 652 F. Supp. 3d 796, 2023 WL 361868 (S.D. Tex. 2023) (the "historical evidence is too sparse and too weak to justify recognizing an unwritten right to commercially sell arms").   Because the Second Amendment does not protect the sale of firearms, it does not prohibit "laws imposing conditions and qualifications on the commercial sale of arms."  *Heller*, 554 U.S. at 626-27; *see also Bruen*, 597 U.S. at 71-72 (Alito, J., concurring) (stating that nothing in the Court's decision disturbed longstanding restrictions on firearms).

The sentencing enhancements Abdulaziz challenges were applied because he used his business and federal firearms license to sell large quantities of firearms to straw purchasers with reason to believe that those firearms would be illegally exported from the United States.  Contrary to Abdulaziz's argument, these enhancements do not regulate his right to own or travel with a firearm.  To the extent that they can be construed as regulating conduct, they regulate Abdulaziz's ability to sell firearms to others, which is not conduct protected by the Second Amendment.  These enhancements, based on unprotected conduct, do not violate the Second Amendment.  Abdulaziz's argument to the contrary is meritless, and his counsel was not ineffective for failing to file a futile motion on the basis.  *See Gibson*, 55 F.3d at 179.

### 3.    Whether there is a Historical Basis for Regulating this Conduct

Finally, even if § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) could be read as regulating conduct otherwise protected by the Second Amendment, the Government could do so if it could "justify its regulation by demonstrating that is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.  To meet this burden, the Government must identify "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir.) (quoting *Bruen*, 597 U.S. at 27), *cert. granted*, 143 S. Ct. 2688 (2023).  To determine whether there is a historical precedent that shows a "comparable tradition of regulation," courts consider "how the challenged law burdens the right to armed self-defense, and why the law burdens that right" compared to how and why the historical regulation was imposed. *Id.* (citing *Bruen*, 597 U.S. at 29).

Multiple historical regulations exist that are similar to the regulations found in § 2K2.1(b)(5) and § 2K2.1(b)(6)(A).  "[C]olonial governments substantially controlled the firearms trade." *Teixeira*, 873 F.3d at 685.  For example, Connecticut banned residents from selling firearms outside the colony. *Id.*  Virginia limited the sales of arms and ammunition to "subjects inhabiting this colony." *Id.* at 685 n.18 (cleaned up).  Massachusetts made it a crime to sell or provide firearms or ammunition to Native Americans, as did five other colonies. *Id.* at 685.  To the extent that § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) apply to the sale or transfer of firearms to persons outside Texas, these enhancements mirror historical regulations and may be constitutionally imposed.

In addition, the United States has long regulated the export of firearms and similar weapons to other countries.  In 1794, the Third Congress made it unlawful to export items including "muskets, pistols, bayonets, swords, cutlasses, musket balls, lead, . . . [and] gunpowder." *United*

20

*States v. Libertad*, No. 22-cr-644 (JSR), 2023 WL 4378863, at *6 (S.D.N.Y. July 7, 2023) (citing Act of May 22, 1794, 1 Stat 369 ("An Act prohibiting for a limited time the Exportation of Arms and Ammunition")); *see also United States v. La Vengeance*, 3 U.S. 297 (1796) (a vessel was subject to forfeiture for violating the law by exporting firearms to the West Indies). Since that time, the federal government has consistently regulated the export of firearms as part of the foreign policy of the United States. *See United States v. Curtis-Wright Export Corp.*, 299 U.S. 304, 322-29 (1936) (listing legislative acts from 1794 to 1795 that gave the President authority to ban or permit the export of arms to France and relying on those historical examples to uphold a prohibition on the export of arms to Bolivia. These historical regulations and prohibitions on the sale and export of firearms demonstrate that § 2K2.1(b)(5) and § 2K2.1(b)(6)(A), which impose sentencing enhancements based on the sale and illegal export of firearms, are consistent with historical firearms regulations and so do not violate the Second Amendment.

Because § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) do not regulate conduct in a manner prohibited by the Second Amendment, Abdulaziz's counsel was not ineffective for failing to file a motion raising that argument. *See Gibson*, 55 F.3d at 179. Abdulaziz's motion for relief on this basis is denied.

## IV.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004) (quoting *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000)) (cleaned up).  Under that controlling standard, the petitioner is required to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (cleaned up).  A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).  The court concludes that reasonable jurists could not find any of Abdulaziz's claims meritorious.  A certificate of appealability is denied.

## V.    Conclusion

Abdulaziz's motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, (Docket Entry No. 837), is denied.  Abdulaziz's civil action, (No. 4:23-cv-2971), is dismissed with prejudice.  The record conclusively demonstrates that no relief is appropriate, and no evidentiary hearing is needed. *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983) (no hearing is necessary when a motion is devoid of factual or legal merit).  Because reasonable jurists could not disagree with the denial of the § 2255 motion, no certificate of appealability is issued. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

SIGNED on March 6, 2024, at Houston, Texas.

Lee H. Rosenthal
United States District Judge